UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
OHIO SECURITY INSURANCE COMPANY,

                       Plaintiff,

    -against-

ACCREDITED SURETY AND CASUALTY
COMPANY, INC.,

                       Defendant.
-----------------------------------------------------------------x

Civil Action No.

**COMPLAINT**

**M A D A M S / S I R S:**

        Plaintiff OHIO SECURITY INSURANCE COMPANY ("Ohio Security"), by its attorneys, JAFFE & ASHER LLP, as and for its Complaint against defendant ACCREDITED SURETY AND CASUALTY COMPANY, INC. ("Accredited"), alleges as follows:

## JURISDICTION AND VENUE

    1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000.00 exclusive of costs.

    2.    At all times hereinafter mentioned, Ohio Security was, and still is, a stock insurance company organized under the laws of the State of New Hampshire, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

    3.    At all times hereinafter mentioned, Ohio Security was, and still is, an insurance company duly authorized to conduct business within the State of New York.

    4.    At all times hereinafter mentioned, Accredited was, and still is, a stock insurance company organized under the laws of the State of Florida, with its principal place of business located at 4798 New Broad Street, Suite 200, Orlando, Florida 32814.

5. At all times hereinafter mentioned, Accredited was, and still is, an insurance company duly authorized to conduct business within the State of New York.

6. This Court has venue over this matter pursuant to 28 U.S.C. § 1391; a substantial part of the events or omissions giving rise to the claim occurred in this District.

## SUBSTANTIVE ALLEGATIONS

**A.     The Insurance Policies**

7. Ohio Security issued a Commercial General Liability policy, No. BLS (23) 61 06 58 22, with a policy period from March 3, 2022 to March 3, 2023, to Shore Built Construction Corp. ("Shore Built"), as the Named Insured (the "Ohio Security Policy").

8. The Ohio Security Policy is subject to an Each Occurrence Limit of $1 million.

9. The Ohio Security Policy defines the terms "you" and "your" as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

10. The Ohio Security Policy contains an "Other Insurance" provision that provides, in relevant part as follows:

> **b.     Excess Insurance**
>
> **(1)** This insurance is excess over:
>
> * * *
>
> **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

11. Upon information and belief, Accredited issued a Commercial General Liability policy, No. 1-TPM-NY-17-01264152-GL-03, with a policy period from October 8,

2

2022 to October 8, 2022 to October 8, 2023, to WCD Services Corp. ("WCD"), as the Named Insured (the "Accredited Policy").

12. Upon information and belief, the Accredited Policy has an Each Occurrence Limit of at least $1 million.

13. Upon information and belief, the Accredited Policy has a primary "Other Insurance" provision as compared to the Ohio Security Policy.

**B.   The Underlying Action**

14. On or about December 14, 2022, Amilcar Rivas Rodriguez ("Rodriguez") commenced an action entitled <u>Amilcar Rivas Rodriguez v. CUCS 105 Washington LLC, Center for Community Services, Inc. and Penta Restoration Corp.</u>, Index No. 726274/2022, in the Supreme Court of the State of New York, County of Queens, by the filing of a Summons and Verified Complaint (the "Underlying Action").

15. On or about July 11, 2023 in the Underlying Action, CCS 105 Washington LLC, Center for Urban Community Services, and Penta Restoration Corp. filed a Third-Party Summons and Third Party Complaint that impleaded Shore Built into the Underlying Action.

16. On or about July 13, 2023 in the Underlying Action, Rodriguez filed a Verified Amended Complaint that asserted direct claims for relief against Shore Built.

17. In the Underlying Action, Rodriguez alleges that there existed a construction project located at 105 Washington Street, New York, New York (the "Project").

18. In the Underlying Action, Rodriguez alleges that, on November 10, 2022, while lawfully and working on the site of the Project, he was caused to suffer bodily injury.

19. In the Underlying Action, Rodriguez alleges that, at the time of his alleged accident, he was pushing a cart containing construction debris, where there was a hole in the floor inadequately covered up by a piece of plywood.

20. In the Underlying Action, Rodriguez alleges that he was caused to fall through said hole on the floor, thereby suffering bodily injury.

21. In the Underlying Action, Rodriguez alleges causes of action sounding in negligence, violation of N.Y. Labor Law §§ 240(1) & 241(6), and violation of the Occupational Safety and Health Act (OSHA).

22. In the Underlying Action, Rodriguez alleges that he suffered traumatic brain injury, post-concussion syndrome, post-traumatic cephalgia, adjustment disorder with anxiety and depression, fluid in right shoulder, AC joint hypertrophy, impingement in right shoulder, early onset of post-traumatic arthritis of the left shoulder, that he forced to undergo surgery of the left shoulder, and that he suffered damages to his left knee, left ankle, and disc herniation to his spine as a result of the alleged accident.

23. In the Underlying Action, Rodriguez claims he suffered past and anticipated future lost earnings of approximately $1 million as a result of the alleged accident.

24. In the Underlying Action, Rodriguez claims he suffered and anticipated future medical expenses of $1.1 million as a result of the alleged accident.

25. In the Underlying Action, the Third-Party Complaint alleges that on and prior to November 10, 2022, Shore Built, its agents, servants, contractors, subcontractors, or employees performed work on the Project.

26. In the Underlying Action, the Third-Party Complaint alleges that, prior to November 10, 2022, Shore Built entered into a written contract or subcontract with WCD to perform work on the Project.

27. In the Underlying Action, the Third-Party Complaint alleges that that Rodriguez suffered bodily injury while working on the Project as an employee of WCD.

28. In the Underlying Action, the Third-Party Complaint alleges that Rodriguez's bodily injury was caused by negligence other than that of the plaintiff, and that such negligence/culpable conduct was that of Shore Built and its "agents, contractors, subcontractors, or employees."

29. The Third Party Complaint alleges causes of action against Shore Built for common law indemnification, contribution, contractual indemnification, and breach of contract for failure to obtain insurance coverage.

30. On or about November 9, 2023, Shore Built filed a Third Party Complaint impleading WCD into the Underlying Action.

31. The Third Party Complaint by Shore Built specifically alleges that Rodriguez was employed by WCD and working on the Project in the course of his employment with WCD at the time of the alleged accident.

32. The Third Party Complaint against WCD alleges causes of action sounding in contribution and common law indemnification.

## C. The Contracts

33. By contract signed on October 26, 2022 by Shore Built, as Contractor, and WCD, as Subcontractor, entered into a written contract, whereby the parties agreed as follows:

> 2. **Insurance.** The Subcontractor shall procure and shall maintain until final acceptance of the Work, such insurance as will protect

the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner, and their officers, directors, agents and employees, for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement, whether performed by the Subcontractor, or by anyone directly or indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable. Such insurance shall be provided by an insurance carrier rated "A-" or better by A.M. Best and lawfully authorized to do business in the jurisdiction where the Work is being performed.

2.1. The Subcontractor's Commercial General Liability and Excess/Umbrella liability policies shall include contractual liability coverage, and its Commercial General Liability, Comprehensive Automobile Liability, and Excess/Umbrella Liability policies shall include additional insured coverage for the benefit of the Contractor, Owner and anyone else the Owner is required to name {as set forth in the schedule below), and shall specifically include coverage for completed operations. The insurance required to be carried by the Subcontractor and.any Sub-Sub-Contractors shall be PRIMARY AND NONCONTRIBUTORY. With respect to each type of insurance specified hereunder, the Contractor's and Owner's insurances shall be excess to Subcontractor's insurance.

2.2. The Subcontractor warrants that the coverage provided under the commercial general liability policy shall be written on an "occurrence" basis with coverage as broad as the Insurance Service Office lnc.'s form and that no policy provisions shall restrict, reduce, limit or otherwise impair contractual liability coverage or the Contractor's, Owner's (or others as required and as listed below) status as additional insured.

\* \* \*

2.4. Unless otherwise stipulated In the Contract Agreement, the Subcontractor shall maintain no less than the limits specified for each of the following insurance coverages:
a) Commercial General Liability using an industry standard unmodified coverage form including contractual liability with minimum limits of $1,000,000 each occurrence, $2,000,000 aggregate with either per project or per location endorsement for property damage and bodily injury; . . . .

(the "Subcontract").

34. The Subcontract was annexed to the Third-Party Complaint of Shore Built as Exhibit "A".

35. The Subcontract applied to WCD's work on the Project.

36. WCD served an Answer to the Second Third-Party Complaint of Shore Built on or about December 1, 2023.

37. Accredited is providing a defense to WCD in the Underlying Action.

C. **Tenders and Responses**

38. By letter dated August 28, 2023, the defense and indemnity of Shore Built was tendered to Accredited as an additional insured under the Accredited Policy.

39. The Subcontract was attached as an enclosure to the August 28, 2023 letter.

40. By letter dated October 5, 2023, which the law firm of Hinshaw & Culbertson LLP issued on behalf of Accredited, Accredited described the claim as follows:

> Further investigation has revealed that Rodriguez was employed by WCD on the date of the accident. According to WCD employee Edgar Leonardo Morocho Santos, he directed Rodriguez and a companion to use containers to remove bricks and wood from the basement. Morocho claims that he observed Rodriguez acting suspiciously and looking around the first floor while pushing a container of bricks. Morocho then witnessed Rodriguez approach an uncovered gap in the floor and deliberately jump down to the basement. Morocho claims that Rodriguez landed on his feet, sat down and leaned back onto the bricks to stage a fall. When Morocho confronted Rodriguez about the staged accident, Rodriguez became defensive and began yelling.
>
> WCD employee Carlos Sumba, who was assigned to oversee the workers at the Premises, claims that he directed workers to pick up refuse and warned them about the hole. Sumba stated that he went to another floor to obtain OSHA planks to cover the hole but, before he could do this, was informed that Rodriguez had fallen.

41. In the October 5, 2023 letter, Accredited disclaimed coverage to Shore Built for the following reasons:

> WCD is not a defendant in the Lawsuit, and the Complaint in the Lawsuit does not allege that Rodriguez's alleged accident was caused by WCD. Moreover, the contract documents we reviewed do not require WCD to name CUCS, Community Services, and/or Penta as additional insureds. As such, based upon the information provided to Accredited to date, the Policy's additional insured endorsement is not triggered.

42. In disclaiming coverage in the October 5, 2023, Accredited failed to consider that the facts outside of the pleadings, as indicated in the same letter, gave rise to the reasonable possibility that the accident was caused, in whole or in part, by WCD's acts or omissions in the performance of WCD's ongoing operations for Shore Built.

43. By letter dated February 5, 2024, the law firm of Hinshaw & Culbertson LLP issued a letter on behalf of Accredited; and in said letter Accredited maintained its denial of coverage – asserting that the contract documents do not require WCD to name Shore Built as an additional insured.

44. Although duly requested, Accredited failed and refused to participate in the defense of Shore Built for the Underlying Action.

45. As such, Ohio Security was required to drop down and provide a defense to Shore Built for the Underlying Action.

### AS AND FOR A FIRST CLAIM FOR RELIEF

46. Ohio Security repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "45" of this Complaint as if more fully set forth herein.

47. Shore Built qualifies as an additional insured under the Accredited Policy for the claims alleged in the Underlying Action.

48. Accredited owes Shore Built a duty to defend and indemnify for the claims alleged in the Underlying Action.

49. Although duly demanded, Accredited has failed and refused to provide a primary defense and indemnification to Shore Built for the claims alleged in the Underlying Action.

50. Ohio Security seeks a determination of its rights with regard to the Accredited Policy, including a declaratory judgment that Accredited was and is required to defend and indemnify Shore Built for the Underlying Action under the Accredited Policy and that such coverage applies on a primary basis before coverage under the Ohio Security Policy applies to Shore Built.

## AS AND FOR A SECOND CLAIM FOR RELIEF

51. Ohio Casualty repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "50" of this Complaint as if more fully set forth herein.

52. Accredited owed Shore Built a primary duty to defend under the Accredited Policy for the claims alleged in the Underlying Action.

53. Although duly demanded, Accredited has failed and refused to provide a primary defense and indemnification to Accredited for the claims alleged in the Underlying Action.

54. The Ohio Security Policy applies excess of the Accredited Policy.

55. As a result of Accredited's failure to acknowledge that it owes a primary duty to indemnify Shore Built, Ohio Security was required to drop down and provide and pay for the defense of the claims alleged in the Underlying Action against Shore Built.

56. As a result of the foregoing, Ohio Security is entitled to a money judgment against Accredited in an amount to be determined by the Court, plus interest at the rate of 9% per annum.

**WHEREFORE**, plaintiff OHIO SECURITY INSURANCE COMPANY demands judgment as follows:

A. On the First Claim for Relief, a declaratory judgment determining the respective rights and obligations of plaintiff OHIO SECURITY INSURANCE COMPANY and defendant ACCREDITED SURETY AND CASUALTY COMPANY, INC. with respect to their liability insurance coverage obligations for Shore Built for the Underlying Action, including a declaratory judgment that defendant ACCREDITED SURETY AND CASUALTY COMPANY, INC. is required to defend and indemnify Shore Built for the Underlying Action, and that such coverage for Shore Built applies on a primary basis before coverage under the Ohio Security Policy applies to Shore Built;

B. On the Second Claim for Relief, a money judgment in favor of plaintiff OHIO SECURITY INSURANCE COMPANY and against defendant ACCREDITED SURETY AND CASUALTY COMPANY, INC., in an amount to be determined by the Court, plus interest; and

   C. Granting plaintiff OHIO SECURITY INSURANCE COMPANY recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated: White Plains, New York
    March 12, 2024

                 Yours, etc.,

                 JAFFE & ASHER LLP

                 By: _____
                   Marshall T. Potashner, Esq.
                 Attorneys for Plaintiff:
                 OHIO SECURITY INSURANCE COMPANY
                 445 Hamilton Avenue, Suite 405
                 White Plains, New York 10601
                 (212) 687-3000